UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| JAVON D. LEWIS, | : | Case No. 3:17-cv-50 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Javon D. Lewis brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. He applied for benefits on September 18, 2018, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-

disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since September 18, 2013. He was thirty-two years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). He has a high school education. *See* 20 C.F.R. § 416.964(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that he is unable to do a full time job because "I can't focus that long. I have muscle spasms. I really can't hold stuff for too long. If I bend or stand up a certain way, my back starts killing me. … I don't like being around a lot of people. I get paranoid." (Doc. #5, *PageID* #101).

Plaintiff has a history of depression. *Id.* at 93. A few months before the hearing, he had thoughts of killing himself. *Id.* at 96. He has also cut himself. *Id.* The last time he did was about a year before the hearing. *Id.* He has trouble concentrating. *Id.* at 93. He either gets distracted very quickly or, if he focuses for too long, he gets irritated. *Id.* He is not able to pay attention during a half-hour television program. *Id.* He sometimes reads—he can read "about a chapter" in one hour. *Id.* He also has irritability. *Id.* at 94. He gets irritable with everyone. *Id.* He argues with his brother almost every day, and, almost every time he does leave his house, he argues with strangers as well. *Id.*

Plaintiff sees Dr. Ballerene at Samaritan Behavioral Health monthly and has for about three years. *Id.* at 98. She prescribed Xanax, Abilify, and Seroquel. *Id.* at 99. He

testified that the medications "help a little bit …." *Id*. He had one side effect—throwing up. *Id*. Plaintiff said that he still throws up every day because he has acid reflux. *Id*.

He experiences paranoia "when I'm around … large crowds of people, people I don't know, I get paranoid, get … the feeling in your stomach like when you're about to get a whooping, like butterflies, I get that feeling." *Id.* at 95. He also starts shaking. *Id*. He does not leave his house very often. *Id*. He goes to the grocery store with his mother once a month and to see his doctors about once a month. *Id*. When he is at home, he spends approximately twenty hours in his room. *Id.* at 97. He usually sleeps three to four hours. *Id*. Although his body is tired, he has difficulty sleeping because his mind races. *Id*. As a result of his lack of sleep, he experiences low energy, tiredness, and fatigue daily. *Id.* at 106.

Plaintiff has carpal tunnel in both hands. *Id.* at 97. His hands get sore, stiff, and "get stuck." *Id*. If he tries to write, his hands cramp up and he drops the pen. *Id.* at 98. If he holds a cup for too long, his hands get stiff. *Id*. He is able to type for "a little while." *Id*. Plaintiff wears braces at night. *Id.* at 105. If the braces do not help, he will likely need surgery. *Id*.

Plaintiff has pain in his low-to-middle back. *Id.* at 102. He also has headaches that last about an hour four times a week. *Id.* at 105. When he has one, all he can do is lie down. *Id*.

Plaintiff lives in a house with his mother, brother, four-year-old son, and one and a half-year-old daughter. *Id.* at 91. His mother, brother, and children's mother help him take care of his kids. *Id.* at 96. His mother helps him with everything. *Id.* at 100.

Plaintiff does not iron his clothes or make food—except in the microwave. *Id*. His mom usually makes him shower but he sometimes goes three to four days without showering. *Id*.

Plaintiff has a GED. *Id.* at 92. When he was in school, he was in special classes. *Id*. He had trouble with concentration and people in school. *Id*. He struggled with reading and math. *Id*. He does not have a driver's license. *Id.* at 91. Plaintiff used to play basketball but he cannot anymore because it hurts his back and cannot move like he used to. *Id.* at 101. He admitted that he had used marijuana in the past—most recently, about a year before the hearing. *Id*.

### B. Medical Opinions

#### i. Ellen W. Ballerene, M.D.

Dr. Ballerene, Plaintiff's treating psychiatrist, completed an impairment questionnaire on November 3, 2014. *Id.* at 548-55. She began treating him in September 2012 and sees him monthly. *Id.* at 548. His primary symptoms include negative thinking, irritability, poor sleep and energy, social isolation, and temper problems. *Id.* at 550. She opined he was markedly limited in his ability to understand and remember detailed instructions; to interact appropriately with the general public; and to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 551-52.

Dr. Ballerene indicated that Plaintiff was capable of low stress work. *Id.* at 554. He is "[a]ble to attend short-term appointments, but avoids prolonged interactions due to

irritability [and] temper problems." *Id*. She estimated that he would absent from work more than three times a month as a result of his impairments or treatment. *Id.* at 555. Dr. Ballerene opined that Plaintiff's prognosis was fair, but he has only had a partial response to medication and therapy. *Id.* at 548. He has ongoing anger outbursts and fights, feels paranoid, has poor concentration and focus, and gets distracted easily." *Id.* at 555.

### ii. Irma Johnston, Psy.D., & Paul Tangeman, Ph.D.

Dr. Johnston reviewed Plaintiff's records on November 18, 2013. *Id.* at 118-28. She indicated that he had two non-severe impairments—spine disorders and osteoarthrosis/allied disorders—and two severe impairments—affective disorders and substance addiction disorders. *Id.* at 122-23. She found Plaintiff has a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.* at 122. Dr. Johnston opined that Plaintiff has a "limited ability to handle more than 1-2 step instructions, due to [mental health symptoms (depression, mind races)." *Id.* at 125. His "depressive [symptoms] interfere [with his] ability to maintain [concentration, persistence, or pace] for more than [simple routine tasks]. He can adapt to settings where there is no [demand] for a fast pace" and "where changes are infrequent and are clearly explained." *Id.* at 125-26. Based on Plaintiff's reports of anger, irritability, and trouble getting along with others, in addition to his history of assaults and incarcerations, he is "[l]imited to superficial or occasional interactions [with] others." *Id.* at 126.

5

On February 11, 2014, Dr. Tangeman reviewed Plaintiff's records and affirmed Dr. Johnston's assessment. *Id.* at 130-41.

### iii. John L. Mormol, M.D., & Edmond Gardner, M.D.

Dr. Mormol reviewed Plaintiff's records on January 8, 2014, and Dr. Gardner reviewed them on March 4, 2014. *Id.* at 118-28, 130-41. Both physicians found that Plaintiff is not under a disability. *Id.* at 128, 140.

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741

6

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV.    The ALJ's Decision**

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1:   Plaintiff has not engaged in substantial gainful employment since September 18, 2013.

Step 2:   He has the severe impairments of mild carpal tunnel syndrome, depression, an anxiety disorder, and a history of cannabis abuse.

Step 3:   He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels but with the following nonexertional limitations: (1) limited to performing unskilled simple repetitive tasks; (2) occasional contact with co-workers and supervisors; (3) no public contact; (4) no teamwork or tandem tasks; (5) no close over the shoulder supervision; (6) no fast paced production work or jobs involving strict production quotas; (7) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next; and (8) frequent use of the hands for handling and fingering."

Step 4:   He is unable to perform any of his past relevant work.

Step 5:   He could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 70-80). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 79.

**V.    Discussion**

Plaintiff contends that the ALJ failed to properly weigh the medical opinions evidence and erred in finding that he was not credible. The Commissioner maintains that substantial evidence supports both the ALJ's evaluation of the medical opinions and the ALJ's finding that Plaintiff was not fully credible.

8

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to

any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Kenyon assigned Dr. Ballerene's opinion "little weight." (Doc. #5, *PageID* #78). Although the ALJ previously described the treating physician rule, he made no reference to it when evaluating Dr. Ballerene's opinion. Indeed, he provided very minimal reasoning for the little weight he gave her opinion: "The progress notes from Samaritan Behavioral Health portray [Plaintiff's] depression and anxiety as only moderate level of severity. They also do not portray [Plaintiff] as seriously agoraphobic or as having significant episodes of decompensation, which would cause frequent absences." *Id.* The ALJ does not provide any examples or citations to the record.

The ALJ's reasons do not justify assigning Dr. Ballerene's opinions little weight. The ALJ is correct that her treatment notes portray Plaintiff's depression and anxiety as moderate. This is consistent with Dr. Ballerene's opinion that Plaintiff was moderately limited in half of the mental activities listed. *Id.* at 550-52. For example, he is moderately limited in his ability to carry out detailed instructions; to ask simple questions or request assistance; and to set realistic goals or make plans independently. *Id.* Further, Dr. Ballerene did not opine that Plaintiff is seriously agoraphobic and, as correctly recounted by the ALJ, there is no mention of agoraphobia in her treatment notes.

Dr. Ballerene did, however, opine that Plaintiff experiences episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from that situation and/or experience exacerbation of signs and symptoms. *Id.* at 553. She explained: "[Patient] withdraws, easily angered in social situations or when

working so avoids these to avoid confrontation." *Id.* Further, he is "[a]ble to attend short-term appointments, but avoids prolonged interactions due to irritability [and] temper problems. Spends short periods of time with son, but unable to tolerate extended time [and] withdraws self from the stress of caring for a young child." *Id.* at 554. And, Plaintiff would, on average, likely be absent from work three or more times a month as a result of his impairments or treatment. *Id.* at 555. The ALJ found that these opinions were inconsistent with her treatment notes.

But, the ALJ does not point to any notes that are inconsistent with these opinions. A review of the treatment notes between September 2012 and July 2015 reveals that Plaintiff saw Dr. Ballerene approximately thirty times. *Id.* at 311-663. During at least twenty-eight of those appointments, Plaintiff reported being irritated or annoyed, arguing with others, or isolating himself or withdrawing. *Id.* This is consistent with Dr. Ballerene's opinion that Plaintiff continues to experience irritability and temper problems.

And, even if substantial evidence supports the ALJ's finding that Dr. Ballerene's opinion is inconsistent with her treatment notes, this single reason does not constitute "good reasons" for assigning her opinion little weight. "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

"If an ALJ fails to give good reasons for declining to give a treating physician's opinion controlling weight, [the Sixth Circuit] will reverse and remand a denial of benefits, even though substantial evidence otherwise supports the decision of the Commissioner." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Friend,* 375 F. App'x at 551; *Wilson,* 378 F.3d at 543-46)). However, an ALJ's failure to provide good reasons may be harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Id.*

In the present case, the Commissioner maintains that any error made by the ALJ is harmless: "Even if the ALJ failed to provide good reasons for not crediting Dr. Ballerene's opinions, the ALJ's decision would still be supported by substantial evidence because the opinions were so patently deficient that no reasonable ALJ would have credited them." (Doc. #9, *PageID* #844). Further, "the ALJ accommodated any limitations that Plaintiff might have had by limiting his interaction with others." *Id.* at 845 (citation omitted).

Dr. Ballerene's opinion is far from "patently deficient." Her opinion contains some of the standard questions that require only a checkmark in response, and she did not answer every single question—sometimes only referring to her notes. But, as discussed

in more detail above, she provided several explanations for conclusions. Further, the record contains over three years of Dr. Ballerene's treatment notes. These notes (although sometimes repetitive) detail her treatment of Plaintiff and support her opinion.

The Commissioner is correct to the extent that the ALJ accommodated some of limitations that Plaintiff might have. However, Dr. Ballerene opined Plaintiff would likely be absent from work three or more days per month, and the ALJ did not include any limitation to account for his absence. Thus, the ALJ's error is not harmless.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[1]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

---

[1] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

13

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Javon D. Lewis was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

February 23, 2018                            *s/Sharon L. Ovington*
                                                                    Sharon L. Ovington
                                                                    United States Magistrate Judge